**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No.: 20-20185-CR-WILLIAMS(s)

**UNITED STATES OF AMERICA**

v.

**MARIO RENE DE LA TORRE,**
    a/k/a "Mario R. Delatorre,"

        **Defendant.**

_____ /

**UNITED STATES' SENTENCING MEMORANDUM**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this sentencing memorandum, and states:

**I.**     **Mario De La Torre's Advisory Guideline Range of Imprisonment**

Mario De La Torre's advisory guideline range of imprisonment should be 33 to 41 months, based on his total offense level of 20, and his criminal history category of I with zero criminal history points. (*See* PSI (DE 132) at pp. 11-12, ¶¶ 39-54; Second Addendum to PSI (DE 132-2) at p. 1.) Based on De La Torre's provision of some substantial assistance regarding the investigation of other persons believed to have committed federal criminal offenses, the United States requests that the Court depart down and impose a term of **30 months' imprisonment**. (*See* United States' Motion for Reduction of Sentence Pursuant to United States Sentencing Guideline Section 5K1.1 (DE 141).)

Further, the United States requests, and Mario De La Torre stipulates to, an order that De La Torre pay restitution in the amount of **$2,129,392.35** to Summit Aerospace, Inc.

II.     **Section 3553(a) Sentencing Factors**

Regardless of Mario De La Torre's advisory guideline range of imprisonment, and his provision of assistance, the United States recommends that the Court sentence him to a term of 30 months' imprisonment, based on the Section 3553(a) sentencing factors discussed below.

1. **The nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1).**

The first Section 3553(a) sentencing factor weighs heavily in favor of a term of 30 months' imprisonment. Mario De La Torre stands convicted of perpetrating an elaborate, decade long, mail fraud and wire fraud scheme. From August 2008, and continuing through October 2018, De La Torre used his position as Senior Vice President of Sales and Marketing for Summit Aerospace, Inc. ("Summit"), to fraudulently embezzle approximately $2.1 million of Summit's funds; which he then split with his co-defendant, Joe Lewis McHomes. Moreover, De La Torre evaded the payment of income tax on his ill-gotten gains, by laundering the fraud proceeds and filing false and fraudulent income tax returns.

To perpetrate the fraud scheme, De La Torre enlisted McHomes to pose as a sales consultant, who supposedly obtained aircraft part repair work for Summit, from Al-Raha Group for Technical Services ("RGTS") in Saudi Arabia. De La Torre created fake invoices purportedly issued by McHomes' fictitious consulting firm, "J-CONN Solutions," for commissions McHomes purportedly earned for selling Summit's services to RGTS. But McHomes did not obtain the repair work that Summit performed for RGTS and was not entitled to any compensation from Summit. Knowing this, De La Torre submitted the fake J-CONN invoices to Summit's accounts payable department, which would issue checks payable to J-CONN. Significantly, De La Torre

2

would create J-CONN invoices in amounts below $10,000 and cause Summit to issue a separate check for each invoice. Summit would then send a set of checks to Joe McHomes, via FedEx.

De La Torre's generation of Summit checks for amounts below $10,000 was an important feature of the fraud scheme, designed to enable him, and McHomes, to launder their fraud proceeds. When McHomes received a set of Summit checks, he would cash them at a check cashing store rather than a bank; and he would structure his cashing so that he didn't cash more than $10,000 of checks on the same day. In this manner, McHomes would convert the checks to cash, without causing the check cashing store (a financial institution) to file a cash transaction report ("CTR") with the Treasury Department. McHomes would then kick back fifty percent of the cash proceeds to De La Torre by depositing the cash in De La Torre's Bank of America account no. 8988 or delivering the cash to De La Torre. When depositing cash in De La Torre's account, McHomes would structure the deposits to avoid generating a CTR.

Mario and Yumet De La Torre used the fraud proceeds deposited in Mario De La Torre's Bank of America account no. 8988 to pay family expenses, including, among other things: American Express credit card bills; Yumet De La Torre's Nordstrom and Neiman Marcus credit card bills; and their daughter's expenses at Stetson University, and Colorado State University. (*See* Exhibit 1, Bank of America checks, signed by Yumet De La Torre; Exhibit 2, Payment to Nordstrom; Exhibit 3, Payment to Neiman Marcus; Exhibit 4, Payments to Stetson University; Exhibit 5, Payment to Colorado State University.)

2. **The need for the sentence to (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, and (B) afford adequate deterrence to criminal conduct, 18 U.S.C. § 3553(a)(2).**

The sentencing factors set forth in Section 3553(a)(2)(A), and (B), weigh heavily in favor of a term of 30 months' imprisonment. Mario De La Torre's offenses are very serious. Again,

De La Torre used his position as a trusted senior executive of Summit to defraud his employer of $2.1 million. He received half of the fraud proceeds and spent them on himself and his family; and he paid no income tax. Thus, a custodial sentence of 30 months' imprisonment is necessary to reflect the seriousness of De La Torre's offenses, promote respect for the law, provide just punishment, and afford adequate general deterrence. A shorter term of imprisonment would be contrary to these sentencing objectives. Moreover, a non-custodial sentence would not punish De La Torre and would only encourage similarly situated persons to steal from their employers.

In his sentencing memorandum, Mario De La Torre argues that his advisory guideline range of imprisonment overstates the seriousness of his crimes; however, his argument only displays his lack of genuine remorse and the need for a guideline term of imprisonment. In particular, **De La Torre blames his victim and invites the Court to find that he was entitled to the money he stole**. He declares that he devised the fraud scheme "amid Summit Aerospace's refusal to pay him the full salary and commissions he was entitled to as senior vice president of sales and marketing" (Sentencing Memorandum (DE 140) at p. 7); and he asserts the loss of $2.1 million "pales in comparison" with the millions of dollars Summit earned from its contracts with RGTS – "agreements Summit was only able to secure because of Mr. De La Torre's sourcing and sales work." (*Id.* at pp. 7-8.) But there is no evidence that Summit refused to pay De La Torre his salary and commissions to which he was entitled; and De La Torre doesn't explain why he remained at Summit during the years he defrauded the company. Besides, even assuming De La Torre's allegation is true, his remedy was to find another job and sue Summit for his unpaid salary and commissions. He was not entitled to perpetrate a fraud scheme as self-help.

4

Mario De La Torre also excuses his conduct as aberrant. He quotes family members who describe him as "humble, loyal, principled, and an 'inherently good man,'" and he declares that his offenses were "entirely out of character and borne of his desire to fund his daughters' college and post-graduate educations." (*See* Sentencing Memorandum (DE 140) at p. 6.) But De La Torre certainly wasn't loyal to his employer, and his offense conduct certainly wasn't aberrant. For ten years, he deliberately perpetrated a complex fraud scheme against his employer. Moreover, De La Torre didn't defraud Summit of $2.1 million solely "to fund his daughters' college and post-graduate educations." Bank records disclose that De La Torre transferred approximately $70,532 to Stetson University, and $14,152 to Colorado State University. Thus, he used the lion's share of his fraud proceeds to provide himself and his family with many other things he would not otherwise have been able to afford. His crimes were borne of his sense of entitlement.

In addition to minimizing his offense conduct, Mario De La Torre argues that he should not be accountable for money he stole before 2017. (*See* Sentencing Memorandum (DE 140) at p. 8.) This is another frivolous argument that displays a lack of remorse and is inconsistent with acceptance of responsibility. De La Torre was timely indicted of the offenses for which he stands convicted; and, the evidence proves his offense conduct prior to 2017 and the loss of $2.1 million. Therefore, there are no grounds for the Court to disregard De La Torre's pre-2017 conduct and to do so would be entirely arbitrary and an abuse of discretion.

**3. The sentencing range established for the offense and defendant pursuant to the Sentencing Guidelines, 18 U.S.C. § 3553(a)(4), and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, 18 U.S.C. § 3553(a)(6).**

Post-*Booker*, consideration of the defendant's advisory guideline range of imprisonment remains important, because the guidelines are an indispensable tool in helping courts achieve

Congress's mandate to avoid unwarranted sentencing disparities among similarly situated defendants. *See United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (*en banc*) (citing *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006)). A sentencing court should give "real weight" to the advisory guideline range. *Id.* (downward variance was unreasonable where court gave no real weight to advisory guideline range) ("Even though not bound by the guidelines, a sentencing court may not give them so little consideration that it amounts to 'not giv[ing] any real weight to the Guidelines range in imposing the sentence.'") (quoting *United States v. Pugh*, 515 F.3d 1179, 1200 (11th Cir. 2008)).

WHEREFORE, the United States requests that the Court sentence the defendant Mario De La Torre to a term of 30 months' imprisonment, and order that he pay restitution in the amount of $2,129,392.35 to Summit Aerospace, Inc.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: **Dwayne Williams**
DWAYNE E. WILLIAMS
Assistant United States Attorney
Florida Bar No. 0125199
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9163
Fax: (305) 530-6168
Dwayne.Williams@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing United States' Sentencing Memorandum was filed with the Clerk of the Court, via CM/ECF, this 25th day of June 2024.

                                                  **Dwayne Williams**
                                                  DWAYNE E. WILLIAMS
                                                  Assistant United States Attorney